**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾

|  |  |  |
|---|---|---|
| | : | |
| **SECURITIES AND EXCHANGE COMMISSION** | : | |
| **450 Fifth Street, NW** | : | |
| **Washington, D.C.  20549,** | : | |
| | : | |
| Plaintiff, | : | **COMPLAINT** |
| | : | |
| v. | : | **03 Civ. No. _____** |
| | : | **(_____)** |
| **GREGORY L. ENGLISH** | : | |
| **8307 Shoregrove Drive** | : | |
| **Humble, Texas 77347,** | : | |
| Defendant. | : | |
| | : | |
| | : | |

‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾

Plaintiff, Securities and Exchange Commission (the "Commission"), alleges as follows:

## SUMMARY

1.    The Commission seeks injunctive relief and the imposition of a civil penalty against Defendant Gregory L. English, a former corporate controller at NCI Building Systems, Inc. ("NCI" or "the Company").

2.    In August 2000, Defendant English learned that the inventory listed on the Company's interim monthly statements exceeded actual inventory by at least $2.6 million. English undertook to address this misstatement through improper journal entries, which had the effect of concealing the overstated inventory.

3.    By virtue of the acts and omissions alleged herein, Defendant English directly or indirectly has engaged, is engaging in or will engage in transactions, acts, practices and courses of business which constitute violations of Sections 10(b) and 13(b)(5) of the Securities Exchange

Act of 1934 ("Exchange Act") [15 U.S.C. §§ 78j(b), 78(m)(b)(5)]; and Exchange Act Rules 10b-5 and 13b2-1 [17 C.F.R. §§ 240.10b-5, 240.13b2-1] promulgated thereunder.

4.      In addition, by virtue of the acts and omissions alleged herein, Defendant aided and abetted the Company's violations of Sections 13(a), 13(b)(2)(A) and 13(b)(2)(B) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. §§ 78m(a), 78m(b)(2)(A), 78m(b)(2)(B)] and Rules 12b-20, 13a-1, and 13a-13 [17 C.F.R. §§ 240.12b-20, 240.13a-1, and 240.13a-13] promulgated thereunder which require public companies to report accurate financial information to the Commission and the public, to maintain accurate books and records and to devise and maintain an effective system of internal controls.

## JURISDICTION

5.      This Court has jurisdiction over this action pursuant to Sections 21(d) and (e) and 27 of the Exchange Act [15 U.S.C. §§ 78u(d) and (e) and 78aa].

6.      Defendant English, directly or indirectly, made use of the means and instrumentalities of interstate commerce, of the mails, or of the facilities of a national securities exchange in connection with the acts, practices, and courses of conduct alleged herein.

## DEFENDANT

7.      From approximately June 2000 until March 2001, Gregory L. English, age 48, worked as corporate controller for NCI Building Systems, Inc. ("NCI") in Houston, Texas.  Prior to June 2000, English worked as controller for NCI's metal building components division (the "Components Division").

## I.      FACTUAL BACKGROUND

8.      NCI, a Delaware corporation with its headquarters in Houston, Texas, is principally engaged in the manufacture and distribution of metal building components and

engineered building systems.  NCI is a public company with securities traded on the New York Stock Exchange.

9.      On April 12, 2001, NCI announced that, due to accounting errors at its metal building components division, the Company's audited financial statements for the fiscal year ended October 31, 2000 and the quarter ended January 31, 2001 would have to be restated.  On June 8, 2001, following an investigation led by its independent auditors, NCI filed with the Commission a Form 10-K/A, restating its financials for both fiscal 1999 and fiscal 2000 and a Form 10-Q/A, restating its financials for the first quarter of fiscal 2001.  According to these filings, NCI overstated net earnings by $1.3 million for fiscal 1999 (2.8 percent), $7.5 million for fiscal 2000 (14.5 percent) and $1.2 million for the first quarter of fiscal 2001 (29 percent).

10.      During the investigation, NCI and its auditors discovered a number of accounting errors at NCI's Components Division that had resulted in material misstatement of NCI's financial statements over the course of the relevant accounting periods.  The errors resulted primarily from:  (1) NCI's failure to update standard costs and scrap metal factors following NCI's conversion to a new management information system (the "MIS system") in May 1999, and (2) failed attempts by NCI accounting personnel to correct (via manual journal entries) for MIS problems in a key inventory liability account.

**A.      English's Conduct**

**1.      Erroneous $2.6 Million Entry in August 2000**

11.      In July 2000, NCI's components division conducted annual physical inventory counts at each components plant.  At the conclusion of the physical counts, the components division account manager reconciled and analyzed the results.  The account manager initially notified Defendant English that he should record a $2.6 million "pick-up" to the book inventory,

as the preliminary physical count numbers showed that the physical inventory was higher than the book number.  Soon after, however, the accounting manager retracted her initial conclusion and informed Defendant English that the book inventory *exceeded* the physical counts by more than $2 million, requiring that English decrease the book inventory number.

12.     Nonetheless, English decided to write down the book inventory figure he had previously reported.  English and the accounting manager proceeded to book the erroneous $2.6 million entry.  This entry had the effect of misstating NCI's book inventory by approximately $4.6 million.  This misstatement overstated pre-tax earnings by approximately eighteen percent in the third quarter of fiscal 2000 as well as an overstated pre-tax earnings by approximately five percent at year-end and, therefore, was material.

13.     Some weeks later, English suggested to the accounting manager that they would offset the erroneous inventory pick-up over time by "expensing" $300,000 per month.  English and the accounting manager were ultimately not able to expense the erroneous pick-up and it remained on the company's books, resulting in material misstatement of NCI's third quarter fiscal 2000 and year-end fiscal 2000 financials.  In March of 2001, English reported to senior management that inventories were materially overstated as a result of accumulated accounting errors.  Thereafter, the Company and its independent auditors initiated an investigation which led to an eventual restatement of previously reported earnings.

14.     By authorizing the erroneous $2.6 million entry, and in masking the error by attempting to expense the cost of the error over time, English knew, or recklessly failed to know, that his actions would have an impact on NCI's books and records, as well as NCI's public filings with the Commission.

**2.      MIS System Errors Resulted in the Use of Unsupported Manual Entries**

15.      Errors in the implementation of the new MIS system following the merger caused balances that should have appeared in NCI's inventory accounts to appear erroneously in an offsetting liability account (the "021090 account"), resulting in understated liabilities related to inventory.  When an outside consultant was unable to fix these errors in the new MIS system, an accounting employee attempted to correct the MIS system problems by making manual journal entries that increased the balance in the 021090 liability account and increased the inventory balance, thus masking the fact that there was a problem with the 021090 liability account.  These problems were further complicated by certain control issues within the accounting organization, such as unavailability of perpetual inventory records that required the company to rely upon annual physical counts and related reconciliation and "systems" issues, including ineffective use of the MIS system controls and excessive software customization.

16.      English knew or should have known about these errors and failed to correct them.

17.      During the period from at least July 2000 through January 31, 2001, NCI filed false and misleading periodic reports with the Commission as a result of the accounting problems described above combined with other errors identified by the independent auditors.  Those reports included, directly or by incorporation, audited financial statements that materially misrepresented the Company's financial results and significantly overstated earnings.  English, by his actions as described above, aided and abetted the Company in filing these false and misleading periodic reports.

**COUNT I**

**FRAUD**
**Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder**

18.     Plaintiff realleges and incorporates herein by reference paragraphs 1 through 17 above.

19.     Section 10(b) of the Exchange Act and Rule 10b-5 thereunder prohibit persons from using devices, schemes or artifices to defraud, making materially false or misleading statements or omissions, and any acts, practices or courses of business that operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security, by use of interstate commerce, the mail, or facilities of a national securities exchange.

20.     Gregory L. English knew, or was reckless in not knowing, of a $4.6 million inventory overstatement that had a material effect on NCI's financial statements during the periods described.

21.     By reason of the foregoing, Gregory L. English has violated Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Exchange Act Rule 10b-5 promulgated thereunder [15 U.S.C. §240.10b-5].

## COUNT II

### REPORTING
**Violations of Section 13(a) of the Exchange Act and
Rules 12b-20, 13a-1, and 13a-13**

22.     Plaintiff realleges and incorporates herein by reference paragraphs 1 through 21 above.

23.     Section 13(a) of the Exchange Act and Rules 12b-20, 13a-1, and 13a-13 promulgated thereunder require every issuer of a registered security to file periodic reports with the Commission that accurately reflect the issuer's financial performance and provide other information to the public.

24.     NCI's periodic reports for the periods ended April 30, 2000 (10-Q), July 31, 2000 (10-Q), October 31, 2000 (10-K), and January 31, 2001 (10-Q) did not accurately reflect its

financial condition.  English, as controller, knowingly provided substantial assistance to NCI in its preparation of periodic reports during these periods.

25.     Section 20(e) of the Exchange Act [15 U.S.C. § 78t(e)] provides that any person that knowingly provides substantial assistance to another person in violation of a provision of this title, or of any rule or regulation issued under this title, shall be deemed to be in violation of such provision to the same extent as the person to whom such assistance is provided.

26.     By reason of the foregoing, English violated Section 13(a) of the Exchange Act [15 U.S.C. § 78m(a)] and Rules 12b-20, 13a-1, and 13a-13 [17 C.F.R. §§ 240.12b-20, 240.13a-1, and 240.13a-13] promulgated thereunder.

## COUNT III

### BOOKS AND RECORDS
### Violations of Section 13(b)(2)(A) of the Exchange Act

27.     Plaintiff realleges and incorporates herein by reference paragraphs 1 through 26 above.

28.     Section 13(b)(2)(A) of the Exchange Act requires registrants to make and keep books, records, and accounts that accurately and fairly reflect the transactions and dispositions of their assets.

29.     From at least March 2000 through January 31, 2001, NCI's books, records and accounts did not accurately and fairly reflect transactions and the disposition of NCI's assets. English, as controller, knowingly provided substantial assistance to NCI in its preparation and maintenance of books, records and accounts during this time period.

30.     Section 20(e) of the Exchange Act provides that any person that knowingly provides substantial assistance to another person in violation of a provision of this title, or of any

rule or regulation issued under this title, shall be deemed to be in violation of such provision to the same extent as the person to whom such assistance is provided.

31.     By reason of the foregoing, English violated Section 13(b)(2)(A) of the Exchange Act [15 U.S.C. § 78m(b)(2)(A)].

## COUNT IV

### FAILURE TO DEVISE AND MAINTAIN INTERNAL CONTROLS
### Violations of Section 13(b)(2)(B) of the Exchange Act

32.     Plaintiff realleges and incorporates herein by reference paragraphs 1 through 31 above.

33.     Section 13(b)(2)(B) of the Exchange Act requires registrants to devise and maintain a system of internal controls sufficient to provide reasonable assurances that, among other things, transactions are recorded as necessary to permit preparation of financial statements in conformity with generally accepted accounting principles ("GAAP") and to maintain the accountability of assets.

34.     From at least March 2000 through January 31, 2001, NCI failed to devise and maintain a sufficient system of internal controls.  English, as controller, was principally responsible for devising and maintaining a system of adequate internal controls at NCI.  English failed to maintain a system of adequate internal controls at NCI.

35.     Section 20(e) of the Exchange Act provides that any person that knowingly provides substantial assistance to another person in violation of a provision of this title, or of any rule or regulation issued under this title, shall be deemed to be in violation of such provision to the same extent as the person to whom such assistance is provided.

36.     By reason of the foregoing, English violated Section 13(b)(2)(B) of the Exchange Act [15 U.S.C. § 78m(b)(2)(B)].

## COUNT V

### CIRCUMVENTION OF INTERNAL CONTROLS
**Violations of Section 13(b)(5) of the Exchange Act and Rule 13b2-1 Thereunder**

37.     Plaintiff realleges and incorporates herein by reference paragraphs 1 through 36 above.

38.     Section 13(b)(5) of the Exchange Act and Rule 13b2-1 promulgated thereunder provide that no person shall knowingly falsify any book, record or account subject to Section 12(b)(2)(A) of the Exchange Act [15 U.S.C. § 78*l*].  English knowingly falsified a book, record or account when he permitted to be recorded an erroneous inventory pick-up in August 2000.

39.     By reason of the foregoing, English violated Section 13(b)(5) of the Exchange Act [15 U.S.C. § 78m(b)(5)] and Rule 13b2-1 [17 C.F.R. §240.13b2-1] promulgated thereunder;

### PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully requests that this Court enter a judgment:

### I.

permanently enjoining Defendant Gregory L. English and his agents, servants, employees, attorneys, and assigns, and those persons in active concert or participation with him, and each of them from violating, or aiding and abetting violations of, Sections 10(b), 13(a), 13(b)(2)(A), 13(b)(2)(B), 13(b)(5) of the Exchange Act and Exchange Act Rules 10b-5, 12b-20, 13a-1, 13a-13 and 13b2-1 thereunder.

### II.

prohibiting Defendant Gregory L. English from serving as an officer or director of any issuer that has a class of securities registered pursuant to Section 12 of the Exchange Act [15 U.S.C.  § 78*l*] or that is required to file reports pursuant to Section 15(d) of the Exchange Act

[15 U.S.C. § 78o(d)] for a period of five years under Section 21(d)(2) of the Exchange Act [15 U.S.C. §78u(d)(2)];

## III.

directing Defendant Gregory L. English to pay a civil penalty in the amount of $25,000 pursuant to Section 21(d)(3) of the Exchange Act [15 U.S.C. §78u(d)(3)]; and

## IV.

granting such other relief as this Court may deem just and appropriate.


Dated:  October 9, 2003


Respectfully submitted,


_____
Thomas C. Newkirk
Cheryl J. Scarboro (D.C. Bar No. 422175)
C. Joshua Felker
Kelly G. Kilroy

Attorneys for Plaintiff
Securities and Exchange Commission
450 Fifth Street, NW
Washington, D.C. 20549-0706
(202) 942-4583 (Scarboro)